## Commonwealth v. Racket Brook Coal. Co.

*Edward DeLaney* and *William J. Oliver*, for Commonwealth.

*Paul E. Pendel*, for defendant.

EAGEN, J., March 13, 1942.—Defendant, the Racket Brook Coal Company, is a corporation chartered under the laws of the Commonwealth of Pennsylvania, and operates a coal breaker in the City of Carbondale, County of Lackawanna.

On or about October 14, 1941, defendant installed or caused to be installed two boilers for the generation of steam in the basement or immediately underneath the coal breaker, hereinbefore referred to. On January 9, 1942, fires were kindled in these boilers and steam generated therein for the purpose of heating the breaker.

Defendant had on many occasions been notified and warned by James F. Munley, a duly-appointed and acting State mine inspector of the First Anthracite District of Pennsylvania for the Commonwealth of Pennsylvania, that the construction, erection and use of

these boilers within the breaker was unlawful and in direct violation of pertinent sections of the Mine Law hereinafter more fully described. Notwithstanding the repeated warnings of said mine inspector, the earliest one of which was given October 7, 1941, the defendant company persisted in the erection of these boilers in the basement of said coal breaker, and later on caused the boilers to be fired for the generation of steam. The repeated warnings of the mine inspector that this was in violation of law have been disregarded by the defendant.

This bill in equity was brought on January 19, 1942, to compel defendant to obey the law. A preliminary hearing was held on January 23, 1942, at which all the above facts were substantially admitted. The particular section of the Anthracite Mine Law involved is as follows:

"It shall not be lawful to place any boiler or boilers, for the purpose of generating steam, under nor nearer than one hundred (100) feet to any coal breaker or other structure in which persons are employed in the preparation of coal: *Provided,* That this section shall not apply to boilers or breakers already erected": article V, sec. 2, of the Act of June 2, 1891, P. L. 176, 52 PS §392.

The court is of the opinion that the facts in the present case manifest a direct violation of the above section of the act and that the preliminary injunction prayed for must issue. The cases which have construed this section of the mine law, while not numerous, have universally enjoined the use of boilers underneath coal breakers or within the prohibited proximity: Commonwealth ex rel. v. Morss Hill Coal Co., 5 Lack. Jur. 364 (1905) ; also, Commonwealth ex rel. v. The Brookwood Coal Co., 10 Dist. R. 253 (1901).

A case very similar to the one at bar is Commonwealth ex rel. v. Stackhouse Coal Co., 22 Dist. R. 78 (1912). In that case the defense to the action was that

the boilers involved were of a low pressure and used entirely for the generation of steam for heating purposes and not for power. In that case Fuller, P. J., said:

"There is no discrimination here, between high pressure and low pressure, steam for heat and steam for power, nor do any circumstances appear which warrant the court in declaring that the proposal of the defendant does not violate the spirit as well as the letter of the enactment."

The learned counsel for defendant has submitted a very copious brief, wherein it is argued that the mine law must be read in the light of modern conditions and improvements. It is submitted that the character of the present-day steam heating boiler is such as to render the particular section null and void, due to the fact that the danger which existed at the time of the passage of the act no longer exists. The purpose of the enactment of the Anthracite Mine Law was to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania. It is undoubtedly true that at the time of the passage of this act steam boilers around the coal mines and breakers were used for the generation of steam for power as well as heating purposes, and that the construction of boilers at that time was such as necessarily to render their erection in or near coal breakers a dangerous condition, endangering the lives of the people working therein. Defense counsel points out that immediately previous to the passage of this mine act many explosions occurred from such boilers and there was a great loss of life. He further points out that these explosions of steam boilers around breakers and mines have become practically extinct for many years. While counsel has submitted to the court a very splendid brief and argument, we are not convinced that the dangerous condition created by the erection of steam boilers within a coal breaker has been completely removed. While it may be fairly assumed that a very minimum amount of

danger exists as long as the steam boilers are used for heating purposes only, still their use for power purposes would constitute a very great danger. If we refused the injunction in this case and declared their use and erection underneath the breakers legal, what would prevent the operator in this case, or any other, from using the same boilers for power purposes a week hence? If this would happen, certainly a very dangerous condition would exist, and we must take into consideration that there are operators who might use steam boilers for generation of steam for power purposes. By bowing to the argument of the defense counsel in this case, we would be derelict in our duty by permitting a violation of a very positive and much-needed statute.

Now, therefore, March 13, 1942, the injunction prayed for is granted.

(a) The Racket Brook Coal Company, its officers, agents, servants and employes are hereby preliminarily enjoined until final hearing from the generation of steam in the boilers hereinbefore more fully described;

(b) The said defendant is enjoined from the further working of its breaker until said boiler or boilers are removed therefrom;

(c) The said defendant is hereby directed and ordered to remove said boilers from its coal breaker, and it is so ordered.

EAGEN, J., July 29, 1942.—On March 13, 1942, a preliminary injunction was granted in the above-entitled case. When the case was listed for final hearing, it was agreed by all parties that no further testimony would be offered on either side and that the evidence offered at the hearing for the preliminary injunction should be considered as all of the evidence in the case and that the matter should be adjudged finally on that record.

The court is of the opinion that the law is stated in its opinion granting the preliminary injunction and

sees no sound legal reason for changing its decision as outlined in that opinion.

In view, therefore, of the foregoing it is now, July 29, 1942, ordered and decreed that the preliminary injunction heretofore granted in the above-entitled case as hereinbefore outlined be a permanent injunction.